IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**REALTY INCOME CORPORATION**                                   **PLAINTIFF**

**V.**                                         **CAUSE NO. 3:18-CV-682-CWR-LRA**

**GOLDEN PALATKA, LLC;**                                        **DEFENDANTS**
**AHMED EL-HAWARY**

## ORDER

Before the Court is the plaintiff's motion for summary judgment. The matter is fully briefed and ready for adjudication.

**I.   Background**

In this landlord-tenant dispute, Plaintiff-Landlord Realty Income Corporation ("RIC") and Defendant-Tenant Golden Palatka, LLC ("GP") entered into a Land and Building Sublease Agreement (the "Lease"). The Lease term commenced on July 1, 2016 and ran for 10 years, with GP having a right to terminate by 5:00 PM Pacific Time on August 31, 2016. This initial "Feasibility Period" was for GP to "determine if the Premises and all aspects thereof are suitable for Tenant's purposes at Tenant's sole discretion." Docket No. 1-1 at 9.

GP's manager, Defendant Ahmed El-Hawary, signed the Lease on behalf of GP on August 29, 2016. *Id.* at 43. El-Hawary also personally guaranteed payment on the Lease when he signed the Guaranty of Sublease on August 31, 2016—the last day of the Feasibility Period. Docket 1-3 at 7.

The Lease required GP to pay monthly rent of $7,500 for the first half of the 10-year term, and $8,250 per month for the second half of the term. The Lease also provided that GP's monthly rent obligations would be abated until the earliest of either: (1) May 29, 2017, or (2) GP's opening of a Golden Corral restaurant on the premises. The abatement of rent was contingent on GP's full

and faithful performance of all provisions within the Lease. If GP did not perform its obligations, the Lease provides for RIC's full recovery of all abated rent.

As might be obvious by the fact of this lawsuit, the parties' relationship broke down. Defendants did not cancel within the Feasibility Period, never moved in, and never paid rent. Accordingly, RIC filed this breach of lease and breach of guaranty suit seeking damages. The present motion followed.

It is undisputed that Defendants GP and El-Hawary never took possession of the premises and did not pay any rent or other sums under the Lease. That fact alone, however, does not necessarily establish RIC's breach of contract claim. Defendants' primary defense is that "the Plaintiff did not deliver the building for [sic] in a condition that the Defendants could utilize for its intended use." Docket No. 33 at 1. Plaintiff RIC argues that the only evidence offered to support this contention is an inadmissible affidavit by El-Hawary. Thus, RIC urges the Court to disregard the affidavit in its summary judgment analysis.

Defendants also argue that summary judgment is inappropriate because there remains a genuine dispute regarding the following: (1) "the point at which [RIC] should have secured a tenant had it used reasonable business judgment in attempting to secure a subsequent tenant," and (2) "the extent of the alleged consequential damages and the temporal limits thereof incurred by" RIC. Docket No. 32 at 3. As with the El-Hawary affidavit, RIC asserts that the evidence Defendants use to try to establish the presence of a genuine dispute of material fact is inadmissible and should not be considered.

## II. Summary Judgment Standard

Summary judgment is appropriate when the movant can show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

If a nonmovant wishes to avoid summary judgment, they must identify *admissible evidence* in the record indicating a disputed material fact. *Id*. at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* at 56(c)(4).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

## III. Discussion

### A. Breach of Contract and Breach of Guaranty

Because this case is proceeding in diversity, the applicable substantive law is that of the forum state, Mississippi. *Erie R.R. Co. v Tompkins*, 304 U.S. 64 (1938). Mississippi law is

determined by looking to the decisions of the Mississippi Supreme Court. *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992).

Under Mississippi law, a "plaintiff asserting any breach-of-contract claim has the burden to prove, by a preponderance of the evidence," (1) the "existence of a valid and binding contract," and (2) that "the defendant has broken, or breached" the contract. *Bus. Commc'n, Inc. v. Banks*, 90 So. 3d 1221, 1224 (Miss. 2012) (quotation marks and citation omitted).

The parties do not dispute that RIC entered into a lease with GP and a guaranty contract with El-Hawary. As mentioned earlier, Defendants admitted that they neither took possession of the premises nor paid any rent or other sum to RIC. Instead, in their response to RIC's motion for summary judgment, Defendants claim that the premises were unusable and uninhabitable due to an automobile accident that occurred in July 2016. For reasons discussed below, the Court will not consider this automobile incident because the evidence Defendants provide in an attempt to support this claim is inadmissible.

However, assuming for present purposes that this evidence was admissible, the Defendants' assertion would still be irrelevant. The alleged automobile accident occurred on July 12, 2016 – well before August 31, 2016, the date the "Feasibility Period" specified in the Lease ended. Defendants had more than five weeks to inspect the premises and terminate the contract had they determined the site to be unusable and uninhabitable. The Lease clearly states that "Tenant's failure [sic] timely to provide the Termination Notice as set forth in this Section [] shall be deemed to be an irrevocable waiver by Tenant of its right to terminate the Lease as provided by this section." Docket No. 1-1 at 10.

Thus, by admitting that they did not take possession of the premises and never paid rent to RIC, Defendants have conceded that they breached the Lease.

### B. Admissibility of Habitability Evidence

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. "Neither legal conclusions nor statements made without personal knowledge are capable of being presented" for consideration at the summary judgment stage. *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018) (citations omitted).

It is well-settled that "on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit offered in support of or opposition to the motion and will consider the admissible portions in determining whether to grant or deny the motions." *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 383 (5th Cir. 1987) (quoting *Lee v. Nat'l Life Assurance Co.*, 632 F.2d 524, 529 (5th Cir. 1980)).

In their opposition to summary judgment, Defendants attached an affidavit of El-Hawary to support their claim that RIC failed to deliver the premises in a usable and habitable state. Docket No. 32-1.

The El-Hawary affidavit states that he makes "this affidavit based on [his] personal knowledge" but fails to elaborate. Docket No. 32-1. The affidavit does not offer any evidence to support a finding that El-Hawary "has personal knowledge of the matter." Fed. R. Evid. 602. It simply states that "[u]pon information and belief, the building that is the subject of the lease was struck by an automobile on July 12, 2016. The damaged [sic] caused by the automobile rendered the building unusable and uninhabitable until well into February 2018." Docket No. 32-1 at 1. The affidavit lays no foundation to illustrate that El-Hawary possesses any personal knowledge on this incident or that this incident made the building unusable and uninhabitable. Thus, this portion of the affidavit is inadmissible and cannot be used in the Court's summary judgment analysis.

### C. Mitigation of Damages

The only remaining issue in dispute is damages.

"An injured party has a duty to take reasonable steps to mitigate damages." *Rolison v. Fryar*, 204 So. 3d 725, 736 (Miss. 2016) (citation omitted). The doctrine of avoidable consequences holds that "an injured party is not entitled to recover damages which he or she could have avoided through reasonable efforts." *Id.* (citation omitted). "This legal principle deals not with the conduct of a plaintiff contributing to his injury, but with his failure to avoid the consequences of his injury after it has been inflicted, to avoid or diminish the damages resulting from his injury." *Id.* (quotation marks and citation omitted).

Defendants try to dispute when RIC should have secured a new tenant for the premises. In support of this argument, Defendants provide a June 5, 2017 email exchange between El-Hawary and RIC.[1] Docket No. 32-2. That day, El-Hawary emailed RIC saying that he and GP "have been trying to get another franchisee that operates closer to that area to step in [their] place as [they] were unable to manage or build the location effectively." *Id.*

In response to El-Hawary's email, RIC representative Darlene Jackson replied, "I am sorry to hear you won't be moving forward with this location," and provided a colleague's contact information to discuss a potential lease assignment. *Id.* This email exchange could be construed as evidence that RIC had notice in June 2017 that Defendants had breached the lease.

In its motion for summary judgment, RIC provides a declaration from its "Vice President, Senior Counsel, [and] Risk Manager" Kyle Campbell. Docket No. 29-1. Campbell's declaration

---

[1] In its rebuttal, RIC refers to this email chain as an exchange between El-Hawary and "an alleged representative of RIC," but provides no actual evidence that the person El-Hawary wrote was not its representative. Docket No. 39 at 5.

states that "[a]fter working with several potential tenants in late 2018 and early 2019," RIC was able to secure a new tenant in June 2019. *Id.* at 5.

There is a lapse of time between the June 2017 email exchange and when RIC worked with potential new tenants in late 2018. However, Defendants have failed to provide any evidence contesting the *reasonableness* of RIC's mitigation efforts. Many factors can affect the commercial leasing industry, and though it may be possible that RIC could have secured a tenant in 2018, Defendants simply do not provide any *evidence* supporting their *assertions* of a failure to mitigate. "[I]n the absence of any proof," this Court will not "assume that the nonmoving party could or would prove the necessary facts." *McCallum*, 66 F.3d at 92.

Defendants again attempt to use conclusory and unsubstantiated statements from the El-Hawary affidavit as evidence that RIC should have been able to secure a new tenant earlier than June 2019. El-Hawary's affidavit says: "As someone in the business of leasing properties, I believe that had Realty Income Corporation made reasonable attempts to find a replacement tenant, that a tenant could have been secured in 2018." Docket No. 32-1. But, even if we assume that El-Hawary's affidavit is meant to serve as Defendants' expert testimony regarding the leasing market—the parties do not state that he was designated as an expert—it fails to provide any "sufficient facts or data" to support this opinion. Fed. R. Evid. 702(b). On the other hand, if we construe El-Hawary's affidavit statement as opinion testimony of a lay witness, we're back to the same issue as before: he has failed to lay a foundation showing first-hand knowledge or observation of the matter at hand.

As the nonmovant, the burden is on Defendants to provide evidence contesting the reasonableness of RIC's mitigation efforts. Defendants have provided only conclusory statements and unsubstantiated assertions. Accordingly, the motion for summary judgment is granted.[2]

### IV.  Conclusion

The motion for summary judgment is granted. Defendants breached the contract. As a result of Defendants' breach, Plaintiff asserts that its damages total $537,913.72. Docket No. 29-1. Plaintiff has 14 days after the entry of this Order to submit a supplemental pleading specifying damages owed, calculations thereof, and associated proof in an itemized manner. Defendants may contest these amounts within 14 days of Plaintiff's submission.

**SO ORDERED**, this the 7th day of August, 2020.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE

---

[2] Defendants have not presented arguments to rebut the breach of guaranty claim. The standard for proving this claim is even easier for RIC to satisfy. "A guarantor is secondarily liable to the creditor on his contract and his liability is fixed only by the happening of the prescribed conditions at a time after the contract itself is made . . . ." *Brent v. Nat'l Bank of Com. of Columbus*, 258 So. 2d 430, 434 (Miss. 1972). Defendants admit that they never occupied the premises and never paid any rent. El-Hawary as Guarantor guaranteed "the full performance of each and all of the terms, covenants, and conditions of the Lease . . . ." Docket No. 29-1 at 50. GP did not perform. Thus, summary judgment on the breach of guaranty claim is granted in RIC's favor.